TOWN OF LUMBERTON v. S. A. BRANCH AND WIFE.

(Filed 27 October, 1920.)

1. **Municipal Corporations—Cities and Towns—Streets and Sidewalks—Dedication—Burden of Proof.**

    Where the defendant is in possession of a strip of land, claimed by plaintiff to be a public street of the town, for the use of lots he owns therein, the burden of proof is on him to show his title to the *locus in quo,* otherwise he must fail in his action.

2. **Municipal Corporations—Cities and Towns—Maps—Plats—Statutes—Dedication.**

    Where the original owner of lands plats them into streets and lots and conveys them to another to be sold by lottery, and lots are accordingly sold with reference to the plat, and under a private act of the Legislature a town was incorporated of the lands so sold, it is a dedication of the streets and public ways, appearing on the plat, to the use of the public.

3. **Same—Evidence.**

    Where the plaintiff claims that the defendant is occupying lands in an incorporated town dedicated and accepted for the use of a public street, an old plat found by a clerk of the Superior Court of the county, among the records of his office, etc., is not sufficient evidence of title when it appears that the defendant had been from the first in adverse peaceful possession of the *locus in quo,* and that the street in question was only indicated as running in the direction of the plaintiff's land, and the plat was torn out so that it did not show thereon that it reached it, etc.

4. **Municipal Corporations—Cities and Towns—Streets—Adverse Possession—Limitation of Actions.**

    Prior to the act of 1891 (Rev., 389), sufficient adverse possession would ripen the title to a street by its citizen against a municipal corporation.

APPEAL by plaintiff from *Allen, J.,* at the February Term, 1920, of ROBESON.

This is an action to recover a lot of land and to remove obstructions therefrom, which the plaintiff alleges is a public street in the town of Lumberton.

The defendant is in possession of the land and claims to be the owner thereof.

The plaintiff offered in evidence a grant to John Wilson, of date 29 April, 1768, covering the land in dispute.

John Wilson conceived the idea of giving a part of this land as a county-seat and town site and of selling lots by lottery. He thereupon had a survey made, and a plat on which there were certain blocks and lots and streets, the lots being numbered, and he then executed a deed to William Tatum and four others conveying the land covered by the plat, and authorizing the grantees to conduct the sale of the lots by lottery, which was done.

The deed to Tatum and others is dated 14 August, 1787, and thereafter by Private Act of 1798 the town of Lumberton was incorporated, the conveyance by Wilson, the platting and sale of the lands being recited in the act, and it was enacted that the said land so laid off be established a town and town common agreeable to the scheme and plan thereof by the name of Lumberton.

The plaintiff also introduced a plat which it claimed to be the original, accompanying the deed to Tatum and others under which the lottery was held.

There was very little if any evidence of possession or use of the street by the plaintiff, but the defendant introduced evidence showing that he, and those under whom he claimed, had been in the adverse possession of the land since 1867.

The following issue was submitted to the jury:

"1. Is the plaintiff the owner of the lands in controversy and entitled to the immediate possession of the same?"

This issue was answered in favor of the defendant, under the instruction of the Court, to which the plaintiff excepted.

There was a judgment for the defendant, and the plaintiff appealed.

*Woodberry Lennon for plaintiff.*

*McLean, Varser, McLean & Stacy and McIntyre, Lawrence & Proctor for defendant.*

ALLEN, J. The burden was on the plaintiff to show that the land in controversy, and now in possession of the defendant, is a public street of Lumberton, and if it has failed to do so the action must fail.

The introduction of the grant to Wilson, and of the deed from Wilson to Tatum and others for sale by lottery, with evidence that the two

papers covered the *locus in quo,* carried the legal title to Tatum and others, and as lots were sold with reference to a plat this would be a dedication of the streets and public ways, appearing on the plat, to the use of the public.

It was therefore necessary for the plaintiff to identify the plat under which lots were sold, and to show that the land in controversy was represented thereon as a street.

The evidence of identification of the plat relied on as the original may be sufficient to be submitted to a jury, but it is largely conjectural.

C. B. Townsend testified: "I went in as clerk of the court of Robeson County in 1879, and served about sixteen years. In going through some old dilapidated records and straightening up things after I got in, I found something that I suppose was this map you hand me, only it was folded and wrapped up in newspapers, and it had the original lottery tickets. It was a map just like this here with these names on it, and I concluded this is the same thing. Of course it has been smoothed out since then. It was similar to this, and folded up in a dilapidated condition in faded piece of newspaper and in a cupboard arrangement in there, and had the original lottery tickets. It attracted my attention because it was unique for me to see something of that sort wrapped up in a little package, and had something about drawing lots in the town of Lumberton, and something similar to that, which I take to be the same thing. That was some time in 1879. They were supposed to be lottery tickets; they had names of lottery tickets and said 'drawing of town lots in the town of Lumberton,' and they were pinned together and kind o' tied up, little bits of paper, numbers on them. And the map was similar to this one, and I take it to be the same. Looks very much like the map I found; I concluded it was. It was folded up and in a dilapidated condition, wrapped up in old faded newspaper."

It will be noted that the original plat was folded, wrapped in newspapers, and had lottery tickets with it, while the one offered in evidence was "smoothed out," had no newspaper or lottery tickets with it, and the most the witness can say of it is he supposes it is the original.

Assuming, however, that it has been identified, what does it show?

It is divided into blocks, consisting of four lots each, except a few irregular blocks, and the lots are numbered from 1 to 131. The outer boundary of these blocks does not include the land in controversy, which is adjacent to lots 116 and 129, which are south of lots 115 and 128, the four lots composing one block.

Streets are laid off on the plat, those running east and west being numbered from 1 to 11, and the street north of the block described above is First Street, leaving the block between the street and the disputed land.

The dispute is not called a street on the plat, nor is there any line within three blocks indicating a purpose to leave an open space for the use of the public.

The town of Lumberton has not opened and improved it for street purposes, although the plat is one hundred and thirty-three years old, and it would be difficult to do so on account of natural conditions.

The only circumstance favorable to the plaintiff is that the old plat is worn away on the edges, and on its eastern side there is a line running a short distance, and then disappearing where a part of the plat is gone, which might have extended originally across the plat so as to indicate a street covering the dispute.

There is no evidence outside of the plat to strengthen this suggestion, and it is .weakened by the fact that there is a line in another part of the plat which does not extend across it, and by the failure of the plaintiff to use and occupy the disputed territory as a street, and in our opinion a line, which may have existed on a plat supposed to be the original is too indefinite to establish the dedication of a street, and that his Honor was correct in holding against the plaintiff on its own title.

There is also very little, if any, dispute that the defendant and those under whom he claims have been in the adverse possession of the land since 1867 under deeds, and it is settled in *Threadgill v. Wadesboro,* 170 N. C., 643, in which the authorities relied on by the plaintiff are reviewed, that title to land could be acquired against a municipal corporation prior to the act of 1891 (Rev., 389), by adverse possession.

If not, why pass the act?

No error.