LESTER WRIGHT AND VIRGINIA WRIGHT, PETITIONERS v. THE TOWN OF MATTHEWS;
THE TOWN OF MATTHEWS ZONING BOARD OF ADJUSTMENT; JOHN
BOUTWELL, JEFF SOLADAY, DON WYKS, TOM WILLIAMS, JEANNE MOORE
AND SCOTT VALLANDINGHAM, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE
TOWN OF MATTHEWS ZONING BOARD OF ADJUSTMENT, RESPONDENTS

No. COA05-239

(Filed 4 April 2006)

**Easements; Highways and Streets— public streets—public right-
of-way—implied dedication—erroneous map—prescription**

The trial court erred by affirming a decision by the Zoning
Board of Adjustment (Board) determining that defendant town
had a public right-of-way across petitioners' real property based
on its erroneous determination that Home Place was a public
street, and the case is remanded for further findings detailing
whether Home Place became a public street by means of implied
dedication, because: (1) a private right-of-way or street may
become a public street by one of three methods including a reg-
ular proceeding before a proper tribunal such as a condemnation
action; by prescription; or through action by the owner such as a
dedication, gift, or sale; (2) neither the Board nor the trial court
made any findings regarding dedication, prescription, or any
other method of acquiring a public interest in Home Place; (3)
there is no evidence that Home Place was ever the subject of a
condemnation proceeding or other proceeding regularly consti-
tuted before the proper tribunal; (4) there is no evidence that
Home Place was ever the subject of a gift or sale by the property

1

owners; (5) there was no substantial, material, and competent evidence that Home Place was a part of Reverdy Lane, and erroneous labeling on a map by others cannot constitute an express offer of dedication to the public on the part of the property owners; (6) there was insufficient evidence to show that Home Place was part of the state-maintained system of highways; (7) although implied dedication may have been the theory under which the Board and trial court concluded Home Place became a public street, neither the Board nor the trial court made any findings regarding acquiescence in the public's use of the property under circumstances indicating that the use was not permissive, affirmative acts respecting the property, or other acts which to a reasonable person would appear inconsistent and irreconcilable with any construction except dedication of the property to public use; and (8) there was no substantial, competent, and material evidence that the state or defendant town maintained Home Place for the requisite twenty-year period to make Home Place become a public street by way of prescription.

Appeal by petitioners from an order entered 4 January 2005 by Judge Nathaniel J. Poovey in Mecklenburg County Superior Court. Heard in the Court of Appeals 21 September 2005.

*Lester and Virginia Wright, petitioner-appellants, pro se.*

*Buckley, McCullen & Buie, P.A., by Charles R. Buckley, III, for respondent-appellees.*

HUNTER, Judge.

Lester and Virginia Wright ("petitioners") appeal from an order of the trial court affirming a decision by the Zoning Board of Adjustment for the Town of Matthews ("the Board"). Petitioners contend the trial court erred in concluding that the Board's decision determining that the Town of Matthews had a public right-of-way across petitioners' real property was supported by competent, substantial, and material evidence in the whole record. Petitioners argue there was insufficient evidence to show that the street in Matthews upon which their home is located is a public street, rather than a private one. For the reasons set forth herein, we reverse the decision of the trial court and remand for further findings.

Petitioners' property is a 2.59-acre tract of land located in Mecklenburg County. Petitioners' property is bordered on two sides

by a street known as "Home Place." Home Place in turn branches off of a public street known as Reverdy Lane. Petitioners' property was once part of a larger tract of land owned by Richard M. Welling and his wife ("the Wellings"). In December of 1958, the Wellings and other property owners petitioned the Board of Commissioners of Mecklenburg County to request the State Highway and Public Works Commission "take over Reverdy Lane, a rural road running from the south side of Highway 51 at a point about 1.5 miles to the east of Highway 16 for a distance of 1 mile." The Board of Commissioners for Mecklenburg County thereafter requested the State Highway Commission add Reverdy Lane to the system of county roads maintained by the state. The length of Reverdy Lane was noted as "0.95 Mile." Reverdy Lane was thereafter accepted by the state and designated SR 3471.

In 1965, the Wellings conveyed to James and Jane W. Norman ("the Normans") by general warranty deed the property presently owned by petitioners. The general warranty deed to the Normans noted that the conveyance was subject to "the 60 foot right-of-way for Home Place for street purposes over the north side and the east side of said tract[.]"

Petitioners purchased this property on 6 June 1984. The general warranty deed to petitioners' property noted that "[t]his conveyance is subject to and there is excepted from said conveyance the right-of-way of Home Place for street purposes over the north side and east side of said tract, all as shown on the aforesaid survey of said property." On 8 June 1984, petitioners signed a document entitled "Acknowledgment," which states as follows:

> This is to acknowledge that although our Survey shows our property at 2032 Home Place, Matthews, N.C. being . . . located on a 60 foot wide street known as Home Place, and our Deed and prior Deeds refer to said street, which is shown as a public street on the Mecklenburg County tax Map; and although we have been advised by the Town of Matthews in connection with the recent annexation of said property into the Town of Matthews that Home Place will be maintained by Matthews; this will confirm that this situation has been discussed and that we have been advised by Eugene C. Hicks, III, Closing Attorney, that Home Place does not appear as a dedicated street on a recorded map, nor is he aware of a separate dedication of same or agreement as to upkeep of same, such that at some later date we could be called upon to join in the expense of upkeep, or to join in a dedi-

cation of said street or to participate in some manner or proceeding to establish a right of way for access to and from our property, Reverdy Lane and Highway #51.

On 25 March 1985, the Town of Matthews passed a resolution requesting that the state delete from its system certain streets, including Reverdy Lane, in order to add the streets to the town's street system. The resolution recognized Reverdy Lane as "SR3471" and noted that its length was "8/10 of a mile." The resolution did not name Home Place as one of the streets to be added to the town's street system.

On 22 June 1994, several of the Wellings' children, as successors to property owned by the Wellings, filed for registration a document entitled "Withdrawal of Street Dedication." The document stated that, "to the extent any document may appear of record which may constitute an offer or proposal for dedication of all or any" extension or expansion of Reverdy Lane, such offer or proposal was withdrawn, "save and excepting as to those portions of Reverdy Lane, which have in fact been constructed, dedicated, and accepted by a municipal authority." The legal description attached as Exhibit A to the Withdrawal of Street Dedication referenced both Reverdy Lane and Home Place as having "a 60 foot private right of way[.]"

At some point, petitioners began inquiries into the status of Home Place. On 6 November 1992, Mr. Eugene Smith, Senior Deputy Attorney General at the North Carolina Department of Justice, on behalf of Attorney General Lacy Thornburg, sent a letter and affidavit to petitioners. The affidavit, signed by Mr. L. C. Smith, Supervisor of the Road Inventory Section of the Geographic Information System Branch of the North Carolina Department of Transportation ("DOT"), stated that "the street in the Town of Matthews known as 'Home Place' as shown on the 'Powell Bill Map' submitted to the Department of Transportation on July 22, 1992, is not now on the State Highway System, nor has it ever been on the State Highway System." Mr. L. C. Smith also drafted a memorandum concerning Home Place dated 3 November 1992. The memorandum stated as follows:

Reverdy Lane in Mecklenburg Co. was added to the state-maintained system[] of roads for 1.00 mile in 1959 and given the secondary road number SR 3471. It was shown on the Meck. Co. [sic] map as basically a straight line until the 1976 map was printed. On the 1976 map, the southern end was changed to show what is the approximate alignment of Home Place. I have not been able to find any documentation deleting the southern end of

the original alignment and adding the revised alignment which is Home Place. I believe that the alignment was inadvertently changed by the draftsman working on the Meck. Co. [sic] map.

Although the alignment was changed on the map, that did not change the DOT's responsibility for maintenance from one road to the other because the change was not supported by any official documentation (road petition, Board approval, project, etc.).

The Charlotte urban map that was produced in 1983 has Home Pl. lettered as SR 3471. However, I believe that this was done because the Meck. Co. [sic] map was incorrectly showing the Home Pl. alignment as SR 3471.

In 1985 an agreement was entered into between the Town of Matthews and the DOT in which several secondary roads were transferred from the state system of roads to the town's system of roads. Reverdy Ln. was one of the roads listed in the documentation as being transferred. Though Home Pl. was not mentioned in the documentation, it was colored as one of the roads to be transferred. Again, I believe that this was the result of the incorrect showing of the Home Pl. alignment as a part of SR 3471.

I have not been able to find any documentation that ever officially added Home Pl. to the state system of roads.

In a letter dated 14 January 1993, Mr. J. D. Goins ("Mr. Goins"), a division engineer at DOT, informed petitioners that

according to our records, the road off Reverdy Lane in Matthews known as "Home Place" is not and never has been a part of the State Maintained System of Highways. Therefore, normal routine maintenance would not have been performed on this roadway. Occasional maintenance may have been performed as a courtesy to property owners due to damage caused by state equipment turning around on this portion of [the] non-state system street.

DOT sent another letter dated 28 February 2001 to petitioners confirming that the status of Home Place as attested to in the previous affidavit signed by Mr. L. C. Smith and later confirmed by Mr. Goins was "still valid."

By letter dated 14 January 2004, DOT informed petitioners that "the entire state-maintained portion, approximately 1.00 mile in length of Reverdy Lane (SR 3471) was finished being paved on September 30, 1965." Enclosed with the letter was a map of the area,

with Reverdy Lane highlighted in yellow and Home Place highlighted in red. The map labeled the length of Reverdy Lane as being "0.99L M" and Home Place as "0.86." The map designated the roads as two separate streets.

On 14 October 2002, petitioners sent a letter by electronic mail to Mr. Robert Brandon ("Mr. Brandon"), Zoning Administrator for Mecklenburg County, expressing their belief that the county violated a zoning ordinance when it issued building permits for houses built on Home Place from 1979 through 1983. In the letter, petitioners disputed the county's reference to Home Place as a "street." By letter dated 22 October 2002, Mr. Brandon informed petitioners that he had determined Home Place was a public street within the Town of Matthews. Petitioners appealed the determination to the Board.

The Board held a hearing on the matter on 5 February 2004. At the hearing, Ralph S. Messera ("Mr. Messera"), Public Works Director for the Town of Matthews, testified on behalf of the town. Mr. Messera stated that the Town of Matthews annexed petitioners' property on 31 December 1983. Referring to the 25 March 1985 resolution by the Town of Matthews, Mr. Messera agreed that "[t]he Town has continuously maintained the street known as Home Place since the adoption of that resolution in March 1985." Mr. Messera testified that the Town of Matthews paved Home Place in 1991 and "took action to add Home Place's mileage to the Powell Bill map that was filed with the State."

The Town also submitted into evidence a letter to petitioners from Garland B. Garrett, Jr. ("Secretary Garrett"), Secretary of DOT, dated 24 October 1996. In the letter, Secretary Garrett informed petitioners that DOT could "find no evidence of a recorded subdivision plat indicating a measured right-of-way easement for Home Place." The letter continued:

> However, your deed, survey plat and property corners recognize a 60 foot right-of-way all of which are evidence enough for legal certification, and your written approval for the paving of Home Place in 1990 was not required. The same is in evidence for other properties on Home Place. By our definition, this evidence provides a dedicated easement for Home Place.

> There is, also, considerable evidence to indicate the municipality was logically led to assume Home Place was state maintained. The North Carolina Department of Transportation maintenance

map used to transfer Reverdy Lane to the Town of Matthews in 1985 indicated an alignment strikingly similar to that of Home Place. In fact, our state map was revised in 1976 to so indicate.

Mr. D. W. Spence, District Engineer, met with Mr. Burnette and discussed at length the document Mr. Burnette signed in 1991, attesting that the North Carolina Department of Transportation forces did maintain Home Place. Mr. Burnette indicated that Home Place was graded and graveled by state forces in the early 1960s in anticipation of the paving of Reverdy Lane and the future addition of Home Place to the state road system.

The soil removed from Home Place was placed on Reverdy Lane to improve the roadbed, according to Mr. Burnette, based on instructions from his supervisor. An aerial photograph taken in 1966 illustrates Home Place with a cleared easement (substantially wider than a driveway) along your entire frontage, which tends to give credence to Mr. Burnette's statements, as many of his former co-workers do not recall or are deceased.

Upon review of the evidence, the Board upheld Mr. Brandon's determination that Home Place was a public street. In support of its decision the Board found as follows:

In the 1960's according to Department of Transportation's letter dated October 24, 1996 from Garland Garrett . . . Home Place was graded and graveled by State forces in the early 1960's in anticipation of Reverdy Lane and future addition of Home Place to the State road system. An aerial photograph . . . in 1966 illustrates Home Place with a cleared easement. That letter was set forth as evidence on behalf of the Town . . . . There has been mention of several deeds for example, one of which was Exhibit No. 1 by the Town, 1965 from the Wellings to the Normans that the description included Home Place and accepted the right-of-way. There was made mention of other deeds (Exhibits No[s]. 2, 3 & 4) that specifically talked about the public right-of-way. The deed to the [petitioners] clearly stated an exception of a public right-of-way. That in addition to the evidence the State was grading or graveling that road or maintaining it. In March of 1985 there was a resolution by the Town of Matthews to take over Home Place from the State system. Subsequently, there was an action by the State Dept. of Transportation to relinquish Home Place to the Town of Matthews. I believe testimony and the documents show that in 1991 that road was paved by the Town of Matthews. Since 1985

Home Place has been maintained by the Town of Matthews. That at no point in time has the Town of Matthews or Board of Commissioners taken any act to relinquish control of Home Place as a public street and or to close it as a public street.

Petitioners petitioned the trial court for writ of certiorari to review the Board's decision. By order filed 4 January 2005, the trial court affirmed the decision of the Board. Petitioners now appeal to this Court.

## I. *Standard of Review*

Upon review of a decision from a Board of Adjustment, the trial court should:

"(1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious."

*Knight v. Town of Knightdale*, 164 N.C. App. 766, 768, 596 S.E.2d 881, 883 (2004) (citation omitted). On review of the trial court's order, this Court must determine whether the trial court correctly applied the proper standard of review. *Id.* This Court applies the "whole record" test to determine whether the findings made by the Board are supported by substantial evidence contained in the whole record. *Id.* "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* " 'Where the petitioner alleges that a board decision is based on error of law, the reviewing court must examine the record *de novo*, as though the issue had not yet been determined.' " *Id.* (citation omitted).

Petitioners are challenging the Board's determination that Home Place is a public street pursuant to the zoning ordinance for the Town of Matthews, which defines a public street as:

A public right-of-way not less than 30 feet in width set aside for public travel and either which has been accepted for maintenance by the State of North Carolina or by the Town of Matthews, has been established as a public street prior to the adoption date of this section, or which has been dedicated for public travel by the

recording of a plat of subdivision which has been approved by the Board of Commissioners.

The zoning ordinance defines a private street as "an interior circulation road designed and constructed to carry vehicular traffic from public streets within or adjoining a site to private residences or to parking and service areas and which is not maintained by the public."

Issues of statutory construction are reviewed *de novo*. *A&F Trademark, Inc. v. Tolson*, 167 N.C. App. 150, 153-54, 605 S.E.2d 187, 190 (2004). " ' "The rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances." ' " *Darbo v. Old Keller Farm*, 174 N.C. App. 591, 594, 621 S.E.2d 281, 283-84 (2005) (citations omitted). " '[T]he basic rule of statutory construction "is to ascertain and effectuate the intention of the municipal legislative body." ' " *Id.* (citations omitted). In doing so, we look to the language of the ordinance, as well as to the spirit and purpose of the ordinance. *See id.* Where an ordinance is clear and unambiguous, its plain meaning will be enforced. *Id.*

Here, the zoning ordinance defines a public street as a "public right-of-way . . . set aside for public travel[]." We must therefore determine whether there is substantial evidence in the whole record to support the Board's determination that Home Place is a public right-of-way which has been set aside for public travel.

## II. Private and Public Streets

Petitioners contend there was insufficient evidence to show that Home Place is a public street under the zoning ordinance. In its order affirming the decision of the Board, the trial court recited the following evidence as supporting the Board's decision:

When Petitioners received their property, their Deed clearly contained language which excepted from the conveyance the right-of-way for Home Place for street purposes. The survey, which Petitioners admit they received when they purchased the property, reflects a 60-foot right-of-way for Home Place.

The record before the Town Board further includes a resolution adding streets to the Matthews street system dated March 25, 1985, which included Reverdy Lane, State Road #3471. The testimony of Ralph Messera, Public Works Director for the Town of Matthews, indicates that the North Carolina Department of Transportation maintained Reverdy Lane until approximately

1985. After the Town adopted the resolution dated March 25, 1985, the North Carolina Department of Transportation took action to remove maintenance of the street from the State system, and at that time, the Town of Matthews took over maintenance of the street. There is further evidence that Home Place was a part of Reverdy Lane and that the resolution and actions affecting Reverdy Lane include Home Place. Mr. Messera testified before the Town Board that the Town of Matthews has continuously maintained Home Place since March 1985, paved the street in 1991, and took action to add Home Place's mileage to the Powell Bill map that was filed with the North Carolina Department of Transportation.

The record contains additional evidence to suggest and support the conclusion that the North Carolina Department of Transportation had maintained Home Place as a public street, possibly as early as 1979, and that the Town of Matthews maintained Home Place as a public street from 1985 until the present time. It thus appears both the North Carolina Department of Transportation and the Town of Matthews accepted Home Place for maintenance as a public street and that the evidence indicates Home Place falls within the definition of a public street according to the Matthews Code, Section 1-6.

Petitioners argue that the evidence is insufficient to support the Board's findings and conclusion that Home Place is a public street. We agree.

A private right-of-way or street may become a public street by one of three methods: (1) in regular proceedings before a proper tribunal (for example, a condemnation action, *see, e.g.*, N.C. Gen. Stat. § 136-103); (2) by prescription; or (3) through action by the owner, such as a dedication, gift, or sale. *See West v. Slick*, 313 N.C. 33, 54-55, 326 S.E.2d 601, 613-14 (1985); *Roten v. Critcher*, 135 N.C. App. 469, 473, 521 S.E.2d 140, 144 (1999); *see generally*, David M. Lawrence, *Property Interests in North Carolina City Streets*, 3-25 (1985).

It is unclear from the findings by the Board and order of the trial court by which of these three methods they concluded that Home Place became a public street. Neither the Board nor the trial court made any findings regarding dedication, prescription, or other method of acquiring a public interest in Home Place. There is no evidence in the record that Home Place was ever the subject of a con-

demnation proceeding or any other " 'proceeding regularly constituted before the proper tribunal[.]' " *West*, 313 N.C. at 54, 326 S.E.2d at 613 (citation omitted). Nor is there any evidence to suggest that Home Place was ever the subject of a gift or sale by the property owners. Thus, Home Place could only have become a public street by way of dedication or prescription. We first examine the law and the evidence in support of dedication.

### A. Dedication

" 'A dedication of property to the public consists of two steps: (1) an offer of dedication, and (2) an acceptance of this offer by a proper public authority.' " *Department of Transp. v. Elm Land Co.*, 163 N.C. App. 257, 265, 593 S.E.2d 131, 137, *disc. review denied*, 358 N.C. 542, 599 S.E.2d 42 (2004) (citation omitted). " 'An offer of dedication can be either express, as by language in a deed, or implied, arising from the "conduct of the owner manifesting an intent to set aside land for the public." ' " *Department of Transp.*, 163 N.C. App. at 265, 593 S.E.2d at 137 (citations omitted). Whether express or implied, it is the owner's intent to dedicate that is essential.[1] *Id.*

### 1. Express Dedication

In the present case, there is insufficient evidence of an express dedication of Home Place. " 'In easements, as in deeds generally, the intention of the parties is determined by a fair interpretation of the grant.' " *Borders v. Yarbrough*, 237 N.C. 540, 542, 75 S.E.2d 541, 543 (1953) (quoting 17 Am. Jur., *Easements*, § 25). The evidence in support of the intent of an owner to dedicate an easement should be " 'clear and unmistakable.' " *Green v. Barbee*, 238 N.C. 77, 81, 76 S.E.2d 307, 310 (1953) (citation omitted). The deed to petitioners noted that there was excepted from the conveyance "the 60 foot right-of-way for Home Place for street purposes over the north side and the east side of said tract[.]" The deed failed to specify whether such right-of-way was for purposes of a public or private street, however. As such, the language of the deed does not create a public right-of-way, but only a private one. *Compare Department of Transp.*, 163

---

1. We note that an offer of dedication of streets to the use of the public may also arise by the recording of a plat denoting lots and streets and a subsequent sale of a lot in a subdivision referring to such recorded plat. *See, e.g.,* N.C. Gen. Stat. § 136-66.10; *Blowing Rock v. Gregorie*, 243 N.C. 364, 367, 90 S.E.2d 898, 901 (1956); Lawrence, *supra*, at 5-8. Here, however, there is no evidence in the record that a dedication of Home Place arose through the recording of a subdivision plat. The 24 October 1996 letter from Secretary Garrett stated that DOT could "find no evidence of a recorded subdivision plat indicating a measured right-of-way easement for Home Place."

N.C. App. at 265-66, 593 S.E.2d at 137-38 (determining that the defendant's conveyances of property referencing a 100-foot right-of-way did not create either an express or implied dedication to the public); *Bumgarner v. Reneau,* 105 N.C. App. 362, 364-66, 413 S.E.2d 565, 567-68 (1992) (emphasis added) (holding that a clause in the defendants' deed which stated that " '[e]xcepting and reserving from this conveyance unto . . . *the general public,* the existing roadway' " constituted an express offer of dedication of the road to the general public). Thus, the trial court's findings regarding petitioners' deed and the excepted sixty-foot right-of-way for Home Place provide no support for its conclusion that Home Place was a public street. Similarly, the Board's finding that "[t]he deed to the [petitioners] clearly stated an exception of a public right-of-way" is unsupported by the evidence and therefore erroneous. We conclude that the language of the deed did not evince a "clear and unmistakable" intent to dedicate Home Place to the public.

Similarly, there was no mention of Home Place in the 1958 petition to the Board of Commissioners of Mecklenburg County submitted by the Wellings' and other property owners for dedication of Reverdy Lane. Indeed, petitioners testified that Home Place did not exist at the time of the 1958 petition. Thus, this document could not have dedicated Home Place to public use.

There is also no evidence in the record of Home Place having been dedicated to public use through any statutory procedure. *See, e.g.,* N.C. Gen. Stat. § 46-17.1 (2005) (parties to a partition proceeding may move for the dedication of portions of the partitioned property for use as public streets); N.C. Gen. Stat. § 136-66.10 (2005) (dedication of right-of-way under local ordinances).

Contrary to the trial court's finding, there was no substantial, material, and competent evidence that Home Place was a part of Reverdy Lane. The 1985 resolution passed by the Town of Matthews did not name Home Place as one of the streets to be added to the Town of Matthew's street system. The length of Reverdy Lane is consistently depicted in the evidence as just under one mile. The 1985 resolution denotes Reverdy Lane as being "8/10 of a mile." The length of Home Place is noted to be "0.86." If Home Place were included as a part of Reverdy Lane, the length of the street would be nearly double in length. Although there was some evidence that Home Place may have been labeled as part of SR 3471 (Reverdy Lane) on the 1976 Mecklenburg County map and the 1983 urban map for Charlotte, such erroneous labeling by others cannot constitute an express offer of

dedication to the public on the part of the property owners. In his memorandum on the subject, Mr. L. C. Smith stated that the labeling was incorrect, and he opined that the mislabeling had arisen because "the alignment [of Home Place] was inadvertently changed by the draftsman working on the Meck. Co. [sic] map." Mr. L. C..Smith noted that, "[a]lthough the alignment was changed on the map, that did not change the DOT's responsibility for maintenance from [Reverdy Lane] to [Home Place] because the change was not supported by any official documentation." Any expansion of the dedication of Reverdy Lane was expressly disavowed by the "Withdrawal of Street Dedication" filed in 1994. It stated that, "to the extent any document may appear of record which may constitute an offer or proposal for dedication of all or any" extension or expansion of Reverdy Lane, such offer or proposal was withdrawn. *See* N.C. Gen. Stat. § 136-96 (2005) (providing for the recording of a declaration of withdrawal of a previous dedication of land for use as a public road). The document referred separately to both Reverdy Lane and Home Place and noted that each had "a 60 foot private right of way." Thus, there was insufficient evidence to support the trial court's finding that "Home Place was a part of Reverdy Lane and that the resolution and actions affecting Reverdy Lane include Home Place."

There was likewise no evidence to support the Board's findings that "[i]n March of 1985 there was a resolution by the Town of Matthews to take over Home Place from the State system" and "there was an action by the State Dept. of Transportation to relinquish Home Place to the Town of Matthews." As stated *supra*, the March 1985 resolution only named Reverdy Lane, and never designated Home Place as one of the streets to be taken over. We moreover conclude *infra*, in subsection B of Section II of the opinion, that there was insufficient evidence to show that Home Place was part of the state-maintained system of highways. We conclude there is insufficient material, competent, and substantial evidence of an express dedication of Home Place. *See Hall v. Fayetteville*, 248 N.C. 474, 483, 103 S.E.2d 815, 822 (1958) (holding that "the city of Fayetteville does not hold title to the disputed strip of land in trust for the use and benefit of the public, and has no rights to it. Therefore, this strip of land is not a public street").

### 2. Implied Dedication

An offer of dedication may also be implied through " ' "conduct of the owner manifesting an intent to set aside land for the public." ' " *Department of Transp.*, 163 N.C. App. at 265, 593 S.E.2d at

137 (citations omitted). "When proving implied dedication, where no actual intent to dedicate is shown, the manifestation of implied intent to dedicate must clearly appear by acts which to a reasonable person would appear inconsistent and irreconcilable with any construction except dedication of the property to public use." *Dept. of Transportation v. Kivett*, 74 N.C. App. 509, 513, 328 S.E.2d 776, 779 (1985).

> In general it appears that an implicit intention may be demonstrated by:
>
> —The owner's use of the putative street as a boundary in a deed, as long as the use was not for descriptive purposes only.
>
> —The owner's affirmative acts respecting the property.
>
> —The owner's acquiescence in the public's use of the property, under circumstances indicating that the use was not permissive.

Lawrence, *supra*, at 5 (footnotes omitted).

In the present case, implied dedication may have been the theory under which the Board and the trial court concluded that Home Place became a public street. However, neither the Board nor the trial court made any findings regarding "acquiescence in the public's use of the property, under circumstances indicating that the use was not permissive[,]" "affirmative acts respecting the property[,]" *id.*, or other acts "which to a reasonable person would appear inconsistent and irreconcilable with any construction except dedication of the property to public use." *Dept. of Transportation*, 74 N.C. App. at 513, 328 S.E.2d at 779.

> While there is evidence in the record that might support findings of fact which in turn might support a conclusion that the property in question was impliedly dedicated to public use, the [Board's and the] trial judge's failure to make definitive findings from the evidence, and to draw a proper conclusion therefrom, requires that there be a new [hearing] to determine the issue . . . .

*Id.* at 513-14, 328 S.E.2d at 779. We therefore reverse the decision of the trial court and remand this case for further findings detailing whether or not Home Place became a public street by means of implied dedication. We now examine whether a public easement in Home Place may have been created through prescription.

## B. *Prescription*

To establish an easement by prescription, a claimant must prove by the greater weight of the evidence that: (1) the use is adverse, hostile or under claim of right; (2) the use has been open and notorious such that the true owner had notice of the claim; (3) the use has been continuous and uninterrupted for at least twenty years; and (4) there is substantial identity of the easement claimed throughout the prescriptive period. Prescriptive easements are not favored in the law, and the burden is therefore on the claiming party to prove every essential element thereof.

*Yadkin Valley Land Co., L.L.C. v. Baker*, 141 N.C. App. 636, 639, 539 S.E.2d 685, 688 (2000) (citations omitted); *see also Hemphill v. Board of Aldermen*, 212 N.C. 185, 188, 193 S.E. 153, 155 (1937) (stating that, "[t]o establish the existence of a road or alley as a public way, in the absence of the laying out by public authority or actual dedication, it is essential not only that there must be twenty years['] use[] under claim of right adverse to the owner, but the road must have been worked and kept in order by public authority").

Here, there was some disputed evidence to indicate that the state may have maintained Home Place as early as the 1960s. The 1996 letter from Secretary Garrett, upon which the Board and the trial court appeared to have heavily relied, referenced a document signed by a Mr. Burnette in 1991. The 1991 document apparently attested that DOT graded and graveled Home Place in the early 1960s "in anticipation of the paving of Reverdy Lane and the future addition of Home Place to the state road system." The 1996 letter does not state that Home Place was actually added to the state road system, however. Notably, the 1991 document does not appear as part of the record, and it appears that it was never directly in evidence. Nor did Mr. Burnette testify.

Petitioners, on the other hand, submitted substantial direct evidence that DOT never maintained Home Place. Namely, petitioners submitted four separate letters and one memorandum from DOT stating that Home Place had never been a part of the state-maintained system of highways. The letter from Mr. Goins indicated that "[o]ccasional maintenance may have been performed [on Home Place] as a courtesy to property owners due to damage caused by state equipment turning around on this portion of [the] non-state system street."

We conclude that there was no substantial, competent, and material evidence that the state maintained Home Place for the requisite

twenty-year time period. Nor was there evidence that the Town of Matthews has maintained Home Place for twenty years. Although there was evidence that the Town of Matthews began maintenance of Home Place in 1985, the hearing before the Board took place on 5 February 2004, before expiration of the twenty-year time period. Neither the Board nor the trial court made any findings regarding prescription. We therefore conclude there was no material, substantial, and competent evidence that Home Place became a public street by way of prescription.

## III.  Conclusion

In conclusion, we determine that the findings made by the Board and the trial court do not support the conclusion that Home Place is a public street.[2] The Town of Matthews did not maintain Home Place for the requisite twenty-year time period to establish prescription. Nor can the Town of Matthews' reliance on an erroneous map create a dedication that was never made. The Board and the trial court made no findings of fact or conclusions of law whether Home Place was impliedly dedicated to the public. We therefore reverse the decision of the trial court and remand this case for further findings detailing whether or not Home Place became a public street by means of implied dedication.

Reversed and remanded.

Judges TYSON and STEELMAN concur.

---

2. We note that this case is between petitioners and the Town of Matthews over whether Home Place is a public street under the zoning ordinance. We do not address the issue of whether the express reservation of the sixty-foot right-of-way in the deed for petitioners' property creates a private easement over their property. Adjoining property owners who may be using Home Place are not parties to these proceedings, and our decision in no manner adjudicates their rights to use Home Place as a private street.